UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
ANDREW YOUNG, individually and on behalf
of others similarly situated,                              :

                    Plaintiff,                    :    OPINION AND ORDER
                                    04 Civ. 5968 (LTS) (GWG)

      -v.-                                                         :

COOPER CAMERON CORPORATION,          :

                   Defendant.                    :
-------------------------------------------------------------X

<u>APPEARANCES OF COUNSEL</u>:


Michael J.D. Sweeney
Law Offices of Dan Getman
9 Paradies Lane
New Paltz, NY 12561
Attorney for Plaintiff

Jennifer B. Rubin
Jennifer F. DiMarco
Mintz Levin Cohn Ferris Glovsky and Popeo, P.C.
666 Third Avenue
New York, NY 10017
Attorney for Defendant

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
ANDREW YOUNG, individually and on behalf
of others similarly situated,                              :

                Plaintiff,          :     OPINION AND ORDER
                                          04 Civ. 5968 (LTS) (GWG)
   -v.-                                                 :

COOPER CAMERON CORPORATION,                                :

                Defendant.          :

------------------------------------------------------------X

**GABRIEL W. GORENSTEIN, United States Magistrate Judge**

      Andrew Young has sued Cooper Cameron Corporation ("Cooper") on the ground that it has failed to pay premium overtime wages in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 203, 207. Young alleges that he regularly worked more than forty hours per week in his position as a Product Design Specialist ("PDS") and that Cooper failed to pay both him and other PDS's overtime compensation for hours worked in excess of forty hours per week.

      Young now moves for an order authorizing a collective action, directing Cooper to provide the names and addresses of potential members of the collective action, and authorizing court-approved notice to be mailed to such individuals for the purpose of obtaining their written consent to join this action as plaintiffs. For the reasons explained below, the motion is granted.

I. BACKGROUND

    A. Facts

Cooper "is a global provider of pressure control, processing, flow control and compression systems as well as project management and aftermarket services for the oil & gas and process industries." Defendant Cooper Cameron Corporation's Memorandum of Law in Opposition to Plaintiff's Motion to Approve Collective Action Notice, filed April 8, 2005 (Docket #24) ("Def. Mem."), at 3. Cooper divides the PDS job into three categories: PDS I, PDS II, and PDS III. See Job Descriptions (reproduced as Exhibit E to Notice of Motion, filed January 24, 2005 (Docket #16) ("Notice of Motion")) ("Job Descriptions"). Young was employed by Cooper as a PDS II from June or July 2001 until March 2004. See Declaration of Andrew Young (annexed as Exhibit A to Notice of Motion) ("Young Decl."), ¶¶ 1-3; Def. Mem. at 3. According to the job description, Young's PDS II position required him to, inter alia, "[p]roduce a working design to meet a general industry design or to satisfy a customer's requirements." Job Descriptions at 2.

Cooper's official job descriptions also set forth the qualifications needed for the PDS I, II and III positions. A PDS I is required to possess "[t]echnical knowledge and 8 or more years related experience" in the field. Id. at 1. A PDS II is required to possess "technological knowledge with 12 or more years[] related experience" in the field. Id. at 2. A PDS III is required to possess a "technological background and 15 or more years related experience" in the field. Id. at 3.

Mac Melton Kennedy, a Cooper representative and Young's supervisor, testified that no PDS has a college degree and that on-the-job training is all that is required to obtain a position as

2

a PDS. See Deposition of the Defendant, Cooper Cameron Corporation, by Mac Melton Kennedy (reproduced as Exhibit A to Declaration of Michael J.D. Sweeney, Esq., filed April 15, 2005 (Docket #27) ("Sweeney Decl.")) ("Kennedy Dep."), at 121-23; Deposition of Andrew Young (reproduced as Exhibit B to Sweeney Decl.), at 78. Although the official job descriptions indicate that a PDS I, II and III have differing responsibilities, see Job Descriptions at 1-3, Kennedy testified as follows concerning their duties:

> Q. Do you know what the distinction is between [PDS] I and II is [sic]?
> A. I, II, and III are just different grade levels, and they're for the purposes of determining salary.
> Q. Do they do different things?
> A. No.
> Q. So, their job duties are the same?
> A. Yes.

Kennedy Dep. at 43. Young concurs that "[t]he defendant employed other [PDS's] that did the same or similar work." Young Decl. ¶ 7. In fact, Kennedy testified that Young's job duties were typical of a PDS at Cooper. Kennedy Dep. at 107-08.

Kennedy also confirmed Young's claim, see Young Decl. ¶¶ 8-10, that he and other PDS's regularly worked more than 40 hours per week without overtime pay. See Kennedy Dep. at 123, 126. In response to an interrogatory, Cooper stated that "all of [its] employees in the position of [PDS] II, including Young, are classified as exempt employees and are not entitled to overtime under the FLSA." Defendant's Responses to Plaintiff's First Set of Interrogatories (reproduced as Exhibit C to Notice of Motion) ("Interrogatory Resp."), ¶ 3. Cooper expected PDS's "to get their work done" even if doing so required them to work more than 40 hours in a week. See Kennedy Dep. at 126.

B.  The Instant Motion

Young seeks an order "allowing this case to proceed as a collective action," directing Cooper to provide the addresses of members of the putative class, and directing that the collective action notice "be served by mail upon the members of the putative class."  See Notice of Motion.  Young contends that "[d]efendant should be required to provide the names and addresses of . . . all current and former [PDS's] employed within three years from the date of this Court's order in an electronic format to facilitate notice."  Brief in Support of Motion to Approve Collective Action Notice (annexed to Notice of Motion) ("Pl. Mem."), at 5; accord Reply Memorandum in Support of Motion to Approve Collective Action Notice, filed April 15, 2005 (Docket #26) ("Pl. Reply Mem."), at 10.[1]  Young has also annexed to his motion papers a proposed court-authorized collective action notice and consent form to be sent out to potential plaintiffs.  See Notice of Lawsuit With Opportunity to Join (annexed as Exhibit B to Notice of Motion) ("Notice of Lawsuit").

Cooper opposes this motion.  See Def. Mem; Declaration of Jennifer F. DiMarco, Esq., filed April 8, 2005 (Docket #25).

II.  APPLICABLE LEGAL PRINCIPLES

The FLSA was designed to eliminate "labor conditions detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and general well-being of workers."  29 U.S.C. § 202(a).  "The purpose of the FLSA . . . was to 'guarantee[] compensation

---

[1]Cooper has already identified and supplied Young with the names and addresses of individuals who are currently employed in the position of PDS II.  See Interrogatory Resp. ¶ 1; Defendant's Amended Initial Disclosures (reproduced as Exhibit D to Notice of Motion), ¶ 1; Def. Mem. at 2.

4

for all work or employment engaged in by employees covered by the Act.'" Reich v. New York City Transit Auth., 45 F.3d 646, 648-49 (2d Cir. 1995) (quoting Tenn. Coal, Iron & R. Co. v. Muscoda Local No. 123, 321 U.S. 590, 602 (1944)) (alteration in original).

The FLSA requires employers to pay overtime for "employment in excess of [forty hours per week] at a rate not less than one and one-half times the regular rate at which [the employee] is employed." 29 U.S.C. § 207(a)(1). The FLSA exempts certain employees from its overtime requirements, including "any employee employed in a bona fide executive, administrative, or professional capacity. . . ." 29 U.S.C. § 213(a)(1). The Second Circuit has held that, "[b]ecause the FLSA is a remedial act, its exemptions are to be narrowly construed" and that the "employer bears the burden of proving that its employees fall within an exemption in the FLSA." Coke v. Long Island Care At Home, Ltd., 376 F.3d 118, 123 (2d Cir. 2004) (citations omitted), petition for cert. filed, 73 U.S.L.W. 3603 (U.S. Mar. 29, 2005) (No. 04-1315).

Section 216(b) of the FLSA provides, in pertinent part, that

> [a]n action to recover . . . liability . . . may be maintained against any employer . . . by any one or more employees for and in behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

29 U.S.C. § 216(b). "Thus, under the FLSA, potential plaintiffs must 'opt in' to a collective action to be bound by the judgment (and to benefit from it)." Hoffmann v. Sbarro, Inc., 982 F. Supp. 249, 260 (S.D.N.Y. 1997). A district court may permit an opt-in notice to be sent to potential plaintiffs. See Hoffmann-La Roche Inc. v. Sperling, 493 U.S. 165, 169-70 (1989);

5

Braunstein v. E. Photographic Lab., Inc., 600 F.2d 335, 336 (2d Cir. 1978) (per curiam), cert. denied, 441 U.S. 944 (1979).

The requirements of Fed. R. Civ. P. 23 do not apply to the approval of a collective action and thus "no showing of numerosity, typicality, commonality and representativeness need be made." Foster v. Food Emporium, 2000 WL 1737858, at *1 (S.D.N.Y. Apr. 26, 2000). Rather, "[t]he threshold issue in deciding whether to authorize class notice in an FLSA action is whether plaintiffs have demonstrated that potential class members are 'similarly situated.'" Hoffmann, 982 F. Supp. at 261 (citation omitted). A plaintiff may meet this burden "by making a modest factual showing sufficient to demonstrate that they and potential plaintiffs together were victims of a common policy or plan that violated the law." Id. (citing cases); accord Patton v. Thomson Corp., 364 F. Supp. 2d 263, 267 (E.D.N.Y. 2005); LeGrand v. Educ. Mgmt. Corp., 2004 WL 1962076, at *1 (S.D.N.Y. Sept. 2, 2004); Harrington v. Educ. Mgmt. Corp., 2002 WL 1009463, at *1 (S.D.N.Y. May 17, 2002); Foster, 2000 WL 1737858, at *1; Realite v. Ark Rest. Corp., 7 F. Supp. 2d 303, 306 (S.D.N.Y. 1998).

The focus of this inquiry, however, is not on whether there has been an actual violation of law but rather on whether the proposed plaintiffs are "similarly situated" under 29 U.S.C. § 216(b) with respect to their allegations that the law has been violated. See Krueger v. N.Y. Tel. Co., 1993 WL 276058, at *2 (S.D.N.Y. July 21, 1993) ("[T]he Court need not evaluate the merits of plaintiffs' claims in order to determine whether a 'similarly situated' group exists."). Thus, in order to satisfy this standard, the named plaintiff need only demonstrate a "factual nexus" between his or her situation and the situation of other current and former employees. Hoffmann, 982 F. Supp. at 262; see also Jackson v. N.Y. Tel. Co., 163 F.R.D. 429, 431 (S.D.N.Y. 1995)

6

("Because this litigation is in its early stages, plaintiffs need merely provide 'some factual basis from which the court can determine if similarly situated potential plaintiffs exist.'") (quoting Schwed v. Gen. Elec. Co., 159 F.R.D. 373, 376 (N.D.N.Y. 1995)). "The burden on plaintiffs is not a stringent one, and the Court need only reach a preliminary determination that potential plaintiffs are similarly situated." Hoffmann, 982 F. Supp. at 261 (citation and internal quotation marks omitted); see also Jackson, 163 F.R.D. at 431 ("The inquiry at the inception of the lawsuit is less stringent than the ultimate determination that the class is properly constituted.").

III. ANALYSIS

    A. Collective Action Notice

The first question presented to this Court is whether Young has demonstrated that the suit should proceed as a collective action. Cooper argues that this case should not so proceed because Young relies upon "bald assertions contained in his declaration to support his claim that a collective action notice should be sent to all current and former [PDS's] employed at Cooper's approximate [sic] 108 facilities, which are located across 21 states." Def. Mem. at 5 (footnote omitted). Cooper contends that the assertions set forth in Young's declaration "are insufficient to satisfy his burden to prove that the potential plaintiff class is similarly situated to him." Id. at 6 (citing Baum v. Shoney's Inc., 1998 WL 968390, at *1 (M.D. Fla. Dec. 3, 1998)).

In fact, case law imposes only a very limited burden on plaintiffs for purposes of proceeding as a collective action. See LeGrand, 2004 WL 1962076, at *2 (plaintiffs "sustained their burden with respect to their FLSA claims" by submitting declarations stating that they were "told by management that [assistant directors of admission] at defendants' schools across the country also had to work over forty hours per week, and were denied overtime") (internal

7

quotation marks omitted) (alteration in original); Harrington, 2002 WL 1009463, at *2 (plaintiff satisfied his "modest preliminary burden" by stating in an affidavit that, "in response to his complaints to management that he was regularly denied overtime pay, his supervisors informed him that it was the defendants' policy not to pay assistant directors overtime compensation because the position was classified as exempt") (citation omitted); Foster, 2000 WL 1737858, at *2 (plaintiffs similarly situated where they alleged that they worked at stores owned by defendants, that they "are (or were) hourly employees," and identified "certain practices" that were "common" to all of defendants' stores that were illegal). Here, Young easily meets his burden as the evidence supplied by Cooper itself shows that all PDS's are similarly situated to Young. Cooper has admitted that all PDS's performed the same job duties, see Kennedy Dep. at 43, and that Young's job duties were typical of a PDS at Cooper. Id. at 107-08. Cooper has also admitted that it classified PDS's as exempt from the FLSA and that it did in fact have a policy not to compensate PDS's for hours worked in excess of 40 hours per week. See id. at 123, 126; Interrogatory Resp. ¶ 3. This is more than sufficient to show that all PDS's are similarly situated for purposes of authorizing a collective action notice.[2]

Cooper contends that Young "is an exempt professional who is not entitled to overtime." Def. Mem. at 8 (citation omitted); see also id. at 9 (stating that "not even the 'lead plaintiff' has a cognizable legal claim"). But this argument addresses only Young's ability to obtain the relief he seeks. As noted, a court adjudicating a motion to authorize a collective action "need not evaluate

---

[2]Baum, relied on by Cooper, see Def. Mem. at 6, is distinguishable. Baum rejected plaintiffs' collective action motion because plaintiffs provided no evidence "other than general statements within their own affidavits" that FLSA violations occurred in locations outside the county in which they worked and failed to show that "potential class members were together the victims of a single decision, policy, or plan." 1998 WL 968390, at *1.

the merits of plaintiffs' claims in order to determine whether a similarly situated group exists." Krueger, 1993 WL 276058, at *2 (internal quotation marks omitted); see also LeGrand, 2004 WL 1962076, at *2 ("To the extent that defendants are attempting [to] argue the merits of the case, they are raising an issue that is not material to the current application."); Foster, 2000 WL 1737858, at *1 ("[A] Court need not evaluate the merits of the case . . . in order to certify a collective action."); Jackson, 163 F.R.D. at 432 ("Defendants' assertions are misplaced in the context of authorization of notice because they address the merits of the [plaintiffs'] claims.") (citation omitted). Thus, Young's entitlement to relief under the FLSA – which could only be determined based on facts not before the Court – does not figure in the inquiry.

Finally, we note that the sending of notice to similarly situated individuals "comports with the broad remedial purpose of the Act, . . . as well as with the interest of the courts in avoiding multiplicity of suits." Braunstein, 600 F.2d at 336; accord Hoffmann, 982 F. Supp. at 262 ("[C]ourts have endorsed the sending of notice early in the proceeding, as a means of facilitating the FLSA's broad remedial purpose and promoting efficient case management.") (citing cases). Courts have recognized that it is best to authorize a collective action and then "wait[] to see what the facts bear out." Realite, 7 F. Supp. 2d at 308 (citation omitted); see also Krueger, 1993 WL 276058, at *2 ("[E]ven if plaintiffs' claims turn out to be meritless or, in fact, all the plaintiffs turn out not to be similarly situated, notification at this stage, rather than after further discovery, may enable more efficient resolution of the underlying issues in this case.") (emphasis in original); Frank v. Capital Cities Communications, Inc., 88 F.R.D. 674, 676 (S.D.N.Y. 1981) ("[T]he experiences of other employees may well be probative of the existence vel non of [an illegal] policy, thereby affecting the merits of the plaintiffs' own claims.").

9

Moreover, the sending of notice "does not prejudice the defendant[] precisely because it is preliminary" and "may be revisited if it later appears, after appropriate discovery, that the additional plaintiffs who opt to join the lawsuit, if any, are not similarly situated." Patton, 364 F. Supp. 2d at 268 (citing cases).

In sum, Young has made the requisite showing that there are other PDS's who are "similarly situated" to him and notice to "opt in" pursuant to 29 U.S.C. § 216(b) is proper under the circumstances.

B. Scope and Form of Notice

Young seeks to send notice to "all current and former [PDS's] employed within three years from the date of this Court's order." Pl. Mem. at 5; accord Pl. Reply Mem. at 10. Young has also provided the proposed text for such a notice. See Notice of Lawsuit. Cooper devotes virtually none of its opposition papers to addressing the scope or form of notice. In a footnote, it argues that Young "has made no attempt to limit the universe of employees to whom he seeks to send a collective action notice." Def. Mem. at 5 n.2 (citation omitted); see also id. at 8 (describing the proposed members of the collective action as consisting of a "wide-ranging population"). But Cooper does not articulate how or why this universe should be limited. It does not even give an indication as to whether there are five additional persons within Young's proposed class or five hundred.

Cooper also apparently contends that the proposed group is too broad merely because it includes persons who are or were employed in all three PDS positions. See Def. Mem. at 2. As already described, however, all PDS's are similarly situated to Young because they did the same work. Thus, they are properly included in the group to be notified. See, e.g., Harrington, 2002

10

WL 1009463, at *2 (because plaintiff's "allegations are with respect to all the assistant directors nationwide, . . . they [shall] be included in the opt-in notice").[3] Of course, the issue of who is entitled to receive notice at this stage of the proceedings is not conclusive and is subject to modification should further discovery prove that all plaintiffs are not in fact similarly situated. See Realite, 7 F. Supp. 2d at 308 ("[S]hould discovery reveal that . . . only plaintiffs who worked in the same . . . restaurant or who held the same job type are similarly situated, [the court] may later decertify the class, or divide the class into subgroups, if appropriate.") (citing Lusardi v. Xerox Corp., 122 F.R.D. 463 (D.N.J. 1988)). Thus, the Court concludes that Cooper's meager objections to the scope of notice are without merit.

The only remaining question for the Court, therefore, is the appropriate form of notice. Courts have held that "the form and content of the notice . . . is to be approved by the Court prior to mailing in order that present and after-the-fact disputes between counsel as to form and manner of consent may be eliminated." Krueger, 1993 WL 276058, at *3 (citing Hoffmann, 493 U.S. at 170). Because Cooper has not objected to the form of the proposed notice and consent form submitted by Young, the Court will authorize their use.

Conclusion

For the foregoing reasons, Young's motion (Docket #16) is granted. Cooper is ordered to provide Young with the names and addresses of current and former PDS's who are or were employed by Cooper in the three years preceding the date of this Opinion. Cooper shall provide

---

[3] Cooper argues that a prior order of Judge Swain, see Memorandum Endorsement, filed January 12, 2005 (Docket #14), should be construed as limiting any notice solely to current PDS II's. See Def. Mem. at 2. This order, however, merely addressed the scope of discovery and did not address the question of whether other categories of PDS's are similarly situated to Young under 29 U.S.C. § 216(b).

this information within 21 days of the date of this Opinion in an electronic format agreeable to Young. In addition, plaintiff's counsel is authorized to mail to the employees identified by Cooper the proposed notice of pendency and consent form annexed to Young's motion papers, provided such mailing takes place within 21 days of the receipt of such names and addresses.

SO ORDERED.

Dated: June 9, 2005
      New York, New York

                                                          _____
                                                          GABRIEL W. GORENSTEIN
                                                          United States Magistrate Judge

this information within 21 days of the date of this Opinion in an electronic format agreeable to Young. In addition, plaintiff's counsel is authorized to mail to the employees identified by Cooper the proposed notice of pendency and consent form annexed to Young's motion papers, provided such mailing takes place within 21 days of the receipt of such names and addresses.

SO ORDERED.

Dated: June 9, 2005
      New York, New York

GABRIEL W. GORENSTEIN
United States Magistrate Judge